IN THE UNITED STATES DISTRICT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ROCKY L. HAWORTH, on behalf of himself and all other similarly situated persons,<br><br>                Plaintiffs,<br><br>vs.<br><br>NEW PRIME, INC.<br><br>                Defendant. | Case No: 19-3025-CV-S-RK |

**SUGGESTIONS IN SUPPORT OF DEFENDANT NEW PRIME'S MOTION TO STAY**

# TABLE OF CONTENTS

STATEMENT OF THE CASES ..................................................................................................2

    A.    *Oliveira* Litigation ...........................................................................................2

    B.    *Haworth* Litigation..........................................................................................4

ARGUMENT ...................................................................................................................................5

I.    Proceedings Should Be Stayed Pending Resolution of *Oliveira*. ...............................5

II.    At Minimum, Proceedings Should Be Stayed Pending the Anticipated Guidance from the Eighth Circuit Regarding FLSA Claims Involving Sleeper Berths. ....................................9

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. America, AFL-CIO*,
 544 F.2d 1207 (3d Cir. 1976)..................................................................................8

*Boutros v. JTC Painting & Decorating Corp.*,
 No. 12-cv-7576, 2013 WL 3110943 (S.D.N.Y. June 19, 2013) .........................9, 11

*Burns v. EGS Financial Care*,
 No. 15-cv-06173-DGK, 2016 WL 7535365 (W.D. Mo. Apr. 12, 2016)............3, 8, 9

*Cadle Co. v. Whataburger of Alice, Inc.*,
 174 F.3d 599 (5th Cir. 1999) ...............................................................................10

*Chudasama v. Mazda Motor Corp.*,
 123 F.3d 1353 (11th Cir. 1997) .............................................................................9

*Clinton v. Jones*,
 520 U.S. 681 (1997)................................................................................................8

*Colo. River Water Conservation Dist. v. United States*,
 424 U.S. 800 (1976).................................................................................................9

*Contracting Northwest Inc. v. City of Fredericksburg, Iowa*,
 713 F.2d 382 (8th Cir. 1983) ............................................................................2, 11

*Curry v. Pleasurecraft Marine Engine Co.*,
 No. 13-03139-CV-S-GAF, 2013 WL 12205046 (W.D. Mo. May 28, 2013) ...........8

*Curwen v. Dynan*,
 2012 WL 1237643 (D. Wash. Apr. 12, 2012) .........................................................8

*Emerson v. Lincoln Electric Holdings, Inc.*,
 No. 09-6004-CV-SJ-GAF, 2009 WL 690181 (W.D. Mo. Mar. 12, 2009) ...............8

*Filtrol Corp. v. Kelleher*,
 467 F.2d 242 (9th Cir. 1972) .................................................................................8

*Gross v. Pfizer, Inc.*,
 No. 10–CV–00110–AW, 2011 WL 4005266 (D. Md. Sept. 7, 2011) ...................11

*Hoffman-Laroche Inc. v. Sperling*,
 493 U.S. 165 (1989)..............................................................................................11

*U.S. ex rel Kraxberger v. Kansas City Power & Light Co.*,
 756 F.3d 1075 (8th Cir. 2014) ...............................................................................8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................................. 11

*Meijer, Inc. v. Abbott Labs.*,
   2009 WL 723882 (N.D. Cal. Mar. 18, 2009) .................................................................... 11

*Minnesota Mining & Mfg. Co. v. Rynne*,
   661 F.2d 722 (8th Cir. 1981) ............................................................................................ 10

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ......................................................................................................... 4

*Oliveira v. New Prime, Inc.*,
   Case 1:15-cv-10603-PBS (D. Mass.) ............................................................................ 2, 5

*Orthmann v. Apple River Campground, Inc.*,
   765 F.2d 119 (8th Cir. 1985) ............................................................................................ 10

*Petrone v. Werner Enterprises, Inc.*,
   18-2116 (8th Cir.) ........................................................................................................ 2, 10

*Petrone v. Werner Enters., Inc.*,
   No. 8:11-CV-401, 2017 WL 510884 (D. Neb. Feb. 2, 2017) ........................................... 10

*Ritchie Capital Mgmt., LLC v. Jeffries*,
   653 F.3d 755 (8th Cir. 2011) ............................................................................................ 10

*Schucker v. Flowers Foods, Inc.*,
   2017 WL 3668847 (S.D.N.Y. Aug. 24, 2017) .................................................................. 10

*U.S. Bancorp Investments Inc v Signature Bank Inc*,
   No. 05-3418-CV-S-RED, 2005 WL 8159162 (W.D. Mo. Oct. 31, 2005) ........................ 11

*United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
   920 F.2d 487 (8th Cir. 1999) ............................................................................................ 10

*United States v. Rice*,
   605 F.3d 473 (8th Cir. 2010) ............................................................................................ 10

*Webb v. R. Rowland & Co.*,
   800 F.2d 803 (8th Cir. 1986) .............................................................................................. 2

A district court has "the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." *Webb v. R. Rowland & Co.*, 800 F.2d 803, 808 (8th Cir. 1986). A stay is warranted here for several reasons. The putative collective and class in this case are both subsets of a larger putative collective and class in a longer-running wage-and-hour case pending in the United States District Court for the District of Massachusetts, brought by Dominic Oliveira. *See* Machin Decl. in Support of Suggestions in Opposition to Conditional Certification ("Machin Decl."), Ex. A (complaint in *Oliveira v. New Prime, Inc.*, Case 1:15-cv-10603-PBS (D. Mass.)). The Plaintiff in this case seeks to represent all "junior drivers" at Prime; Oliveira seeks to represent *all* drivers. *Compare* Compl. ¶¶ 25-27 *with* Ex. A ¶¶ 65, 68. Oliveira is pursuing Fair Labor Standards Act ("FLSA") claims on behalf of the proposed collective of drivers, as well as Missouri minimum wage claims and unjust enrichment claims on behalf of the proposed class of drivers; so is Haworth. *Compare* Compl. ¶¶ 25-60 *with* Ex. A ¶¶ 64-105.

Haworth's counsel suggested that this case would be much narrower than the claims at issue in Oliveira, focused primarily on the question of compensation for time spent in sleeper berths. To date, however, discovery has revealed that this is not so. Instead, Haworth's focus is as broad as the complaint suggests, if not broader. And, in any event, the Eighth Circuit is currently considering a case regarding the compensability of sleeper berth time, which is a significant legal issue for this case. *See Petrone v. Werner Enterprises, Inc.*, 18-2116 (8th Cir.). Given the substantial overlap between this case and *Oliveira*, the more advanced stage of the *Oliveira* litigation, and the Eighth Circuit's pending decision that could control a central legal issue in this case, this Court should stay proceedings in this case pending the resolution of *Oliveira* or, at minimum, pending the Eighth Circuit's decision in *Petrone*. *See Contracting Northwest Inc. v.*

1

*City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983). Such a modest stay would cause no prejudice to Plaintiff or any other members of the putative collective and class—all of whom are putative collective and class members in *Oliveira* and whose FLSA claims are currently tolled. *See Burns v. EGS Financial Care*, No. 15-cv-06173-DGK, 2016 WL 7535365, at *1 (W.D. Mo. Apr. 12, 2016) ("In considering whether to grant a stay, a court considers multiple factors, including whether the applicant will be irreparably harmed absent a stay; whether issuance of the stay will substantially injure the other parties interested in the proceeding; the balance of harms in delaying discovery against the possibility that the underlying motion will dispose of the case; the public interest; and the breadth of pending discovery.").

## STATEMENT OF THE CASES

### A. *Oliveira* Litigation

Dominic Oliveira is a former driver with New Prime, Inc. ("Prime"). In 2013, he participated a training program at Prime for drivers that do not already have Commercial Drivers Licenses ("CDLs"). Ex. A ¶ 29. As Oliveira alleges in his complaint, the training program includes multiple phases. In the first phase, when drivers are "D" seat drivers, they receive hands-on-training from more experienced drivers; this phase lasts approximately "three to four weeks." Ex. A ¶ 24; Field Decl. in Support of Suggestions in Opposition to Conditional Certification ("Field Decl.") ¶ 3. In the next phase, after obtaining their CDLs, "B2 trainee drivers" and other "B" seat drivers continue their training but are on the company's payroll. Ex. A ¶ 22; *see id.* ¶ 27; Field Decl. ¶ 4. During this period, they drive with a lead or "A" seat driver, who provides additional hands-on training to help the "B" seat drivers gain the skills they need to not only hold their CDLs but drive on their own. Field Decl. ¶ 4. Trainees who successfully complete this phase are typically eligible to drive for the company as employees or as independent contractors who

2

may lease trucks from the company. Ex. A ¶ 22; *see id.* ¶ 27; Field Decl. ¶ 4. Oliveira leased a truck from the company and became and independent contractor. Ex. A ¶ 41.

In the operative, amended complaint, Oliveira challenges his status as an independent contractor, *id.*, but he also challenges the method by which he was compensated as a trainee, including both his time as a "D" seat driver and as a "B" seat driver. *Id.* ¶¶ 29-40. Oliveira later worked at Prime as a company driver, and he also challenges his compensation during that phase of his tenure as a company employee. *Id.* ¶¶ 52-63. He brings legal claims under the FLSA, on behalf of a putative collective or "216(b)" class that includes "all current and former employees that drove for [Prime], whether or not categorized as employees, trainees, or independent contractors who were not compensated for all training time," were "paid by the mile without regard to hours worked and/or had improper deductions taken from their paychecks." *Id.* ¶ 65 (defining the putative collective or "216(b) class"); *id.* ¶¶ 84-93 (asserting FLSA claims on behalf of the putative collective). He also brings claims under the Missouri Minimum Wage Act and "breach of contract or unjust enrichment/quasi-contract" claims on behalf of a putative Rule 23 class that is defined in the same way as the putative collective. *Id.* ¶ 68 (defining the putative class); *id.* ¶¶ 94-105 (asserting claims on behalf of the putative class).[1]

Prime moved to compel arbitration of Oliveira's claims under the Federal Arbitration Act ("FAA"); the Supreme Court ultimately resolved the parties' dispute over whether the FAA's exception for "contracts of employment" of certain workers applied to independent contractor operating agreements like the one Oliveira executed. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019). Because the Court concluded that the exception did apply, the case was remanded to

---

[1] Oliveira also brings, in his individual capacity, claims under the Maine labor laws. Ex. A. ¶¶ 106-112.

3

the district court, where it is now in active litigation. This month, Oliveira will move for final certification of his claims under Federal Rule of Civil Procedure 23, as well as certification under the FLSA. *Oliveira v. New Prime, Inc.*, Case 1:15-cv-10603-PBS, Dkt. 165 (D. Mass.) (Aug. 29, 2019). All discovery, regardless of whether it relates to class certification issues, will be completed by January 31, 2020, except that class-wide damages discovery may be completed at a later date. *Id.*, Dkt. 150, at 1 (Mar. 5, 2019). The parties will also engage in mediation on November 14, 2019. *Id.*, Dkt. 156 (Apr. 24, 2019).

During the initial phases of the *Oliveira* case, which were focused on the FAA exception, the parties agreed to "tolling of the limitations period on the FLSA claims for potential opt-in plaintiffs as of October 2, 2015." *Id.*, Dkt. 59, at 1 (Nov. 14, 2015). That agreement remains in effect.

**B.** ***Haworth* Litigation**

On January 22, 2019, Haworth filed this lawsuit. *See* Compl. Haworth was a "D" seat driver for Prime, and then spent less than two weeks a "B" seat driver. *See* Machin Decl. Ex. D, Haworth Tr. 189:6-17; *id.* 150:3-8; Compl. ¶ 4. In the complaint, he brings FLSA challenges to Prime's "practice of paying its 'B' seat drivers . . . less than the minimum wage guaranteed by the FLSA" and asks to pursue those claims on behalf of a collective of all "similarly situated employees." Compl. ¶ 25 (defining the collective); Pl. Mot. for Conditional Cert. 11 (defining collective as all "B" seat or junior drivers); Compl. ¶¶ 38-48 (asserting FLSA claims on behalf of the putative collective). He also brings claims under the Missouri Minimum Wage Act and "breach of contract or unjust enrichment/quasi-contract" claims on behalf of putative Rule 23 classes that include all "B" seat drivers from the allegedly applicable periods. *Id.* ¶¶ 27 (defining the putative classes); *id.* ¶¶ 49-60 (asserting claims on behalf of the putative class).

4

Although Plaintiff has sought conditional certification of the proposed collective, he will not file a motion for class certification until after that motion is resolved, nor will class-wide or collective-wide discovery be complete until that time. *See* Dkt. 27, at 2-3 (May 8, 2019).

**ARGUMENT**

I. **Proceedings Should Be Stayed Pending Resolution of *Oliveira*.**

Every issue in this case is an issue in *Oliveira*, and every single member of the putative collective and class in this case is part of the putative collective and class in *Oliveira*. Litigating both cases at the same time, therefore, would unnecessarily consume judicial resources. Haworth's counsel will presumably argue that this case is smaller, both in the scope of drivers covered and the legal questions at play, but that is misleading. To be sure, this case involves only one of several types of drivers at Prime, but the "B" seat driver is not a permanent status, it is a transitory position that typically lasts a few weeks—always *after* "D" seat status, and for most drivers, before a longer period as an "A" seat driver. *See supra* at 4. Therefore, every single member of this putative class is a member of the putative class in *Oliveira*, and many of the members of the putative class in *Oliveira* were at one time "B" seat drivers.

For the many drivers who complete the training program and go on to drive in "A" seat positions for months or years, this case will address potential claims regarding their compensation for only a few weeks of their time:



By contrast, the *Oliveira* case addresses the entire period:



And the *Oliveira* case involves the same legal claims under the FLSA, state law, and unjust enrichment theories that Haworth now asserts. *See supra* at 4-5. By its very nature, then, the *Oliveira* case addresses issues *identical* to the ones raised by Haworth's complaint. Of course, Prime disputes liability in both cases, but it is undeniable that *Oliveira* will bear directly on all of the legal issues pending before this Court, while if this case proceeds, it will address only some of the legal issues pending in *Oliveira*. In effect, the below diagram represents the two cases:



"In the exercise of its sound discretion, a court may hold [a] lawsuit in abeyance to abide the outcome of another [proceeding] which may substantially affect it or be dispositive of the issues"

before the court. *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. America, AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also U.S. ex rel Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014) ("A district court has very wide discretion in handling pretrial discovery."); *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (in the exercise of its discretion, a district court may "stay" a case "pending the outcome of an[other] proceeding" that will bear directly on the legal issues before the court). Because resolution of the *Oliveira* case may dispose of *all* of the claims at issue in this case, a stay of this case is particularly appropriate.

It would be a tremendous waste of judicial and party resources to adjudicate the same legal issues in this case that have been litigated for over five years, and are now being litigated at a more advanced stage—in *Oliveira*. A stay would also prevent the parties from incurring potentially unnecessary and burdensome costs associated with further discovery and further discovery disputes. *See Emerson v. Lincoln Electric Holdings, Inc.*, No. 09-6004-CV-SJ-GAF, 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009) ("refusal to grant a stay could cause Defendant to unnecessarily expend resources before" threshold issues of jurisdiction were determined) *Curwen v. Dynan*, 2012 WL 1237643, at *2 (D. Wash. Apr. 12, 2012) (holding that "anticipated cost and burden of the discovery process" constituted "good cause" sufficient to justify stay); *see Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (a court has "broad discretion to stay proceedings as an incident to its power to control its own docket"); *see also Burns*, 2016 WL 7535365, at *1 (listing factors in granting stay); *Curry v. Pleasurecraft Marine Engine Co.*, No. 13-03139-CV-S-GAF, 2013 WL 12205046, at *1 (W.D. Mo. May 28, 2013) The prejudice to Prime of such needless duplication of litigation is heightened here because this case is hardly limited to the single issue of whether sleeper berth time is compensable. *See* Pl. Mot. for Conditional Cert. 4 (raising questions about compensation for several other activities, including navigation, waiting time, paperwork,

7

inspections, fueling, and maintenance); *id.* 13. Furthermore, a stay would avoid unnecessary adjudication of Plaintiff's motion for conditional certification of the proposed FLSA collective action, as well as the possibility of confusing (and dueling) opt-in notifications. *See Boutros v. JTC Painting & Decorating Corp.*, No. 12-cv-7576, 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013).

No prejudice will result from the stay. To the contrary, Plaintiff would benefit by avoiding potentially unnecessary costs of his own. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("The party seeking discovery also bears costs"). Unlike most FLSA cases, there is no ticking clock on the claims of absent class members—the tolling agreement in *Oliveira* remains in effect and covers anyone whose claims might be brought in this case, underscoring yet again that the cases are duplicative. *See Burns*, 2016 WL 7535365, at *1 (tolling ensures that "no party will be substantially injured by granting a stay"). And it is clear that, in Haworth's mind, this case is not even limited to his time as a "B" seat driver. Instead, he believes this case is about more—including all of the aspects of the training program at issue in *Oliveira*. *See* Machin Decl., Ex. D Haworth Tr. 70:25-71:2 ("Exhibit 5" is "pretty much as well as I can explain what I feel the case is about, yes"); Machin Decl., Ex. E, Haworth Tr. Ex. 5 (outlining all phases of the training program, including the "D" seat phase, and the "B" seat phase). He will suffer no prejudice if the case that actually matches his description of his claims proceeds first.

The requested stay is a modest one, in light of the short timeframe in which the *Oliveira* case will be resolved. *See supra* at 4-5. And the stay is consistent with "the general principle . . . to avoid duplicative litigation . . . [a]s between federal courts." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "[T]he district court has the authority to refuse to hear [a] case if it raises issues that substantially duplicate those raised by a

8

case pending in another court." *Ritchie Capital Mgmt., LLC v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011) (citing *United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010), and *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985), which adopted the first-to-file rule); *see also Minnesota Mining & Mfg. Co. v. Rynne,* 661 F.2d 722 (8th Cir. 1981) (per curiam) (emphasizing the discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court); *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir. 1999) (emphasizing the importance of the first-to-file rule); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

Indeed, courts faced with an FLSA suit that is duplicative of a previously-filed FLSA suit routinely dismiss or transfer the second suit on such grounds. *See Schucker v. Flowers Foods, Inc.*, 2017 WL 3668847, at *4 (S.D.N.Y. Aug. 24, 2017) (collecting cases).

In light of these principles, a stay in this case is the appropriate course.

## II. At Minimum, Proceedings Should Be Stayed Pending the Anticipated Guidance from the Eighth Circuit Regarding FLSA Claims Involving Sleeper Berths.

At minimum, the Court should stay this case pending the Eighth Circuit's resolution of the *Werner* case. Haworth contends that he should have been compensated for every hour he spent in the sleeper berth. In *Werner*, the district court concluded that applicable regulations "create[] a presumption that truck drivers are not on duty when in a sleeper berth" and that sleeper berth time is not compensable. *Petrone v. Werner Enters., Inc.*, No. 8:11-CV-401, 2017 WL 510884, at *5 (D. Neb. Feb. 2, 2017) (reversing prior order and ruling that sleeper berth time was non-compensable). The Eighth Circuit is currently reviewing that decision, and the case has been fully briefed and argued. *See Petrone v. Werner Enterprises, Inc.*, 18-2116 (8th Cir.). Accordingly, in

9

the near future, the Eighth Circuit will issue critical guidance regarding the compensation of sleeper berth time, a key legal issue in this case.

Where an appellate court's decision will have a "direct bearing on the present case[]," it "would be an extraordinary waste of time and money to conduct" discovery and motions practice, "only to have to do it all again because . . . the parties and the Court were proceeding under a legal framework that the [appellate court] determined did not apply." *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009); *Gross v. Pfizer, Inc.*, No. 10–CV–00110–AW, 2011 WL 4005266, at *3 (D. Md. Sept. 7, 2011) (noting that the court's previous stay of proceedings was granted pending a Supreme Court decision that would have a significant impact on the case and further holding that "in the interests of judicial economy," the Court would "continue to stay discovery" pending that decision); *see also U.S. Bancorp Investments Inc v Signature Bank Inc*, No. 05-3418-CV-S-RED, 2005 WL 8159162, at *1 (W.D. Mo. Oct. 31, 2005) (staying case in interests of judicial economy and in order to prevent "inconsistent verdicts"). Moreover, "it does not promote efficient case management to facilitate notice to potential class members where the representative plaintiffs have failed to state plausible FLSA violations" or where, as here, an appellate court may soon conclude that they have failed to do so. *See Boutros*, 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013) (citing *Hoffman-Laroche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)).

## CONCLUSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (holding district court has the "inherent power" to stay litigation "to control its docket, conserve judicial resources, and

provide for a just determination of the cases pending before it"). For the foregoing reasons, Defendant respectfully requests that this Court exercise that discretion and issue a stay proceedings in this case, in order to prevent unnecessary duplication of efforts, the resulting drain on judicial and party resources, and the risk of inconsistent judgments that could affect not only Prime but the putative class members.

Date: September 11, 2019

Respectfully submitted,

**GIBSON DUNN & CRUTCHER LLP**

/s/ Amanda C. Machin
Michele L. Maryott
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3945 Telephone
(949) 475-4668 Facsimile
mmaryott@gibsondunn.com

Amanda C. Machin
1050 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
(202) 887-3705 Telephone
(202) 530-4244 Facsimile
amachin@gibsondunn.com

Kathleen M. Nemechek
BERKOWITZ OLIVER, LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
(816) 561-7007 Telephone
(816) 561-1888 Facsimile
knemechek@berkowitzoliver.com

**COUNSEL FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

  The undersigned hereby certifies that on this the 11th day of September, 2019, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*s/ Amanda C. Machin*
Amanda C. Machin
