**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

|  |  |
|---|---|
| **ROCKY L. HAWORTH, on behalf of himself and all other similarly situated persons,**<br><br>        **Plaintiffs,**<br>**vs.**<br><br>**NEW PRIME, INC.,**<br><br>        **Defendant.** | **Case No. 6:19-cv-03025-RK** |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MOTION TO TRANSFER

Respectfully Submitted,

**CRIMMINS LAW FIRM LLC**
Virginia Stevens Crimmins, MO #53139
Matthew R. Crimmins, MO #53138
214 S. Spring Street
Independence, Missouri 64050
(816) 974-7220 Telephone
(855) 974-7020 Facsimile
m.crimmins@crimminslawfirm.com
v.crimmins@crimminslawfirm.com

**HODES LAW FIRM, LLC**
Garrett M. Hodes, MO #50221
900 Westport Road, 2nd Floor
Kansas City, Missouri 64111
(816) 931-1718 Telephone
(816) 994-6276 Facsimile
garrett@hodeslawfirm.com

**FAIR WORK, P.C.**
Hillary Schwab, *admitted pro hac vice*
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261 Telephone
(617)488-2261 Facsimile
hillary@fairworklaw.com
**COUNSEL FOR PLAINTIFF AND THE CLASS**

# TABLE OF CONTENTS

I.   Statement of Facts ................................................................................................ 2

   A.   Background Facts and Procedural History ................................................ 2

   B.   Oliveira Matter ...................................................................................... 2

   C.   Settlement Negotiations ......................................................................... 3

   D.   Summary of Settlement Terms ............................................................... 3

      1.   Terms of the Monetary Settlement and Distribution ...................... 3

      2.   Releases and Non-Monetary Relief ............................................... 5

      3.   Class Notice and Administration Costs. ......................................... 6

      4.   Plaintiff's Service Award and Attorneys' Fees. .............................. 8

      5.   Transfer, Settlement Administration and Final Approval ............... 8

II.  Legal Standard .................................................................................................... 9

III. Argument ......................................................................................................... 10

   A.   A Review of the Applicable Factors Favors Approval of the Settlement. ..... 10

      1.   The Terms of the Proposed Settlement are Fair, Reasonable and Adequate ............ 10

      2.   The Parties Engaged in Meaningful Discovery and Vigorous Arm's Length
      Negotiations before Reaching an Agreement. ................................................ 12

   B.   Rule 23 Certification for Settlement Purposes is Appropriate in this Matter ..... 13

      1.   Rule 23(a) Standards are Satisfied ................................................ 13

      2.   Rule 23(b)(3) Standards are Satisfied ........................................... 16

   C.   The Class Notice Plan is Appropriate and Conserves Judicial Resources ..... 17

   D.   Appointment of Class Counsel ............................................................... 18

   E.   Transfer and the Final Fairness Hearing ................................................ 18

IV.  Conclusion ....................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................................. 15

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 10, 13, 16

*Ark Ed. Ass'n v. Bd. of Educ. of the Portland, Ark. School Dist.*, 446 F.2d 763 (8th Cir. 1971) . 14

*Brown v. Precythe*, No. 2:17-cv-04082-NKL, 2018 WL 3118185 (W.D. Mo. June 25, 2018) ... 14

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) ........................................................... 15

*Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183 (D. Kan. 1991) ...................................... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) .............. 17

*Gautreaux v. Pierce,* 690 F.2d 616 (7th Cir. 1982) ..................................................................... 10

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364 (1982). ...................................... 15

*Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010) ............................................. 11

*In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006). ..................................................... 13

*In re Citric Acid Antitrust Litigation*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................... 11

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................. 11

*In re Urethane Antitrust Litig.*, 251 F.R.D. 629 (D. Kan. 2008) ........................................... 14, 17

*Little Rock School Dist. v. Pulaski Cty. Special School Dist. No. 1,* 921 F.2d 1371 (8th Cir. 1990)
.................................................................................................................................... 9, 10

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................ 9, 10

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................... 11

*Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179 (D. Kan. 2002) .................... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615 (9th
Cir. 1982) .................................................................................................................... 11

*Petrovic v. Amoco Co.*, 200 F.3d 1140 (8th Cir. 1999) ............................................................... 10

*Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005) ................................................. 19

*Schueneman v. Arena Pharmaceuticals, Inc.*, 310CV01959CABBLM, 2020 WL 3129566 (S.D.
Cal. June 12, 2020) ....................................................................................................... 11

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ................................................... 11

*Swisher v. U.S.*, 189 F.R.D. 638 (D. Kan. 1999) ........................................................................ 15

*Walton v. United Consumers Club*, 786 F.2d 303 (7th Cir. 1986) ............................................... 10

ii

**Statutes**

28 U.S.C.A § 1404 ............................................................................................................ 18, 19

29 U.S.C. § 201 *et seq* ........................................................................................................... 2

**Rules**

Rule 23 ................................................................................................................... *passim*

**Treatises**

*Manual for Complex Litigation* (4th ed. 2012) ................................................................. 9, 10, 13

*Newberg on Class Actions* (4th. ed. 2011) ................................................................. 9, 10, 16, 19

Plaintiff Rocky Haworth ("Named Plaintiff" or "Class Representative") and Defendant New Prime, Inc. ("Defendant" or "Prime") have reached a Federal Rule 23(b)(3) class and Fair Labor Standards Act collective action settlement ("Settlement") on behalf of all current and former "B" or "C" Seat Drivers who worked for Defendant from October 2, 2012 to May 8, 2020 ("Class Members" or "B/C Seat Class Members"). The Settlement was reached as a part of a global settlement in conjunction with the case styled *Oliveira v. New Prime, Inc.*, Case No. 1:15-CV-10603 pending in the United States District Court for the District of Massachusetts ("*Oliveira* matter"). This global Settlement provides substantial monetary and non-monetary relief to all B or C Seat Drivers, as well as other classes of drivers captured by the *Oliveira* matter, for an alleged failure to pay minimum wages and has the valuable effect of providing relief to the class and eliminating the risks, delay and expense both sides would bear if this litigation continued to a resolution on the merits. Given the unique procedural posture of this case, including that B/C Seat Class Members will have claims in both this case and the *Oliveira* matter, Named Plaintiff seeks preliminary review and approval of the settlement for the B/C Seat Class Members as to the claims alleged in this case and requests transfer of this matter to the United States District Court for the District of Massachusetts, which, on July 23, 2020, preliminarily approved the settlement (*see* Exhibit 2 to Plaintiff's Motion), and to be consolidated with the *Oliveira* matter for purposes of notice, settlement administration and final approval of the Settlement. The material terms of the Settlement are memorialized in the Settlement Agreement and Release of Claims ("Agreement") that has been contemporaneously filed as Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Motion for Transfer. As the Settlement is fair, reasonable, and adequate under the circumstances, Plaintiff respectfully requests that this Motion be granted.

1

# I. STATEMENT OF FACTS

## A. <u>Background Facts and Procedural History</u>

On January 22, 2019, Named Plaintiff filed a Federal Rule of Civil Procedure 23 class action pursuant to Missouri state law and a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA"), to recover unpaid minimum wages against Defendant on behalf of himself and other similarly situated B/C Seat Class Members. *See* Complaint [Doc. 1]. Named Plaintiff and the proposed class are (or were) truck drivers who worked for Defendant and drove as a part of a team with more senior truck drivers. All B/C Seat Class Members were compensated based upon the greater of a per mile rate or a flat, weekly rate, regardless of the number of hours worked. Complaint at ¶¶ 14-15; *see also* Declaration of Matthew Crimmins, ¶ 2 (hereinafter "Crimmins Dec"), attached to the Motion as Exhibit 3. Defendant filed its Answer on March 27, 2019, asserting, among other defenses, that Named Plaintiff and other drivers were not similarly situated, and that Defendant had properly paid Named Plaintiff and all B/C Seat Class Members under the applicable wage and hour laws. *See* Answer [Doc. 17]. Following the filing of this lawsuit, the parties embarked upon significant discovery, including Defendant's production of millions of rows of electronic data related to work performed by B/C Seat Class Members, and compensation paid, the exchange of thousands of pages of documents, as well as depositions of the parties. Crimmins Dec. at ¶¶ 3-4. On August 15, 2019, Named Plaintiff moved for conditional certification of an FLSA collective action which was granted on March 23, 2020. *See* Order [Doc. 84].

## B. *<u>Oliveira</u>* <u>Matter</u>

On March 4, 2015, Dominic Oliveira filed a Federal Rule of Civil Procedure 23 class action pursuant to Missouri and Massachusetts state law and a collective action under the FLSA, to recover unpaid minimum wages against Defendant on behalf of himself and other similarly

situated individuals who had participated in Defendant's truck driver training program and/or drove for Defendant as a B/C seat driver, A seat driver, or independent contractor driver. *See Oliveira v. New Prime, Inc.*, Case No. 1:15-CV-10603, Complaint (D. Mass.) [Massachusetts Doc. 1]. Defendant filed an Answer on September 26, 2017. [Massachusetts Doc. 117].[1]

### C. Settlement Negotiations

Following this Court's Order conditionally certifying this case as a collective action, and in connection with the *Oliveira* matter, the parties began active, arm's length discussions regarding a possible global resolution of these cases. To facilitate these discussions, the parties engaged in remote negotiations through the mediator D. Charles Stohler, Esq.[2] Crimmins Dec. at ¶ 9. These negotiations, occurring through experienced counsel on both sides, transpired over several months and culminated in a global agreement in principle to resolve this matter and the *Oliveira* matter, shortly before the collective action notice was to be sent to the B/C Seat Class Members.[3] Crimmins Dec. at ¶ 9.

### D. Summary of Settlement Terms

#### 1. Terms of the Monetary Settlement and Distribution

Under the terms of the parties' executed Agreement, Defendant will provide up to Eight Million Five Hundred Thousand Dollars ($8,500,000.00) ("B/C Seat Settlement Fund") to the B/C

---

[1] Defendant litigated and defended these matters separately until September 11, 2019, when it asked this Court to stay this matter and allow the *Oliveira* matter to proceed. *See* [Doc. 61-62]. Following this request, Plaintiff's counsel in *Oliveira* entered an appearance in this case on behalf of Named Plaintiff in an effort to minimize any inefficiencies between the two matters. This Court denied Defendant's motion to stay. [Doc. 84 at p.2-4].

[2] The parties had also previously mediated this matter with John Phillips, Esq., with Jay Daugherty Mediation Services in June 2019 as a part of the Court's MAP program, and the parties in *Oliveira* had previously had an in-person mediation session with Mr. Stohler in November 2019. Crimmins Dec. at ¶ 9.

[3] The Court stayed the sending of the FLSA collective action notice so that the parties would present this proposed settlement for the Court's review. [Doc. 92].

3

Seat Settlement Class who worked for Defendant from October 2, 2012 to May 8, 2020, relating to the claims asserted in this case ("Class Period").[4] Agreement at Definitions § 6.b and ¶ B.2.

Each B/C Seat Class Member will be entitled to a Minimum Allocation of $100.00, regardless of whether they file a Consent to Join Form. *Id.* at ¶ C.1. In addition to this Minimum Allocation, each of the B/C Seat Class Members will be allocated a share of the B/C Seat Settlement Fund (after it is reduced by the Minimum Allocations, approved attorneys' fees, litigation and settlement administration costs, and service awards), based upon an equitable formula that accounts for the (1) number of weeks worked during the class period as a B/C seat driver, (2) number of miles driven during the Class Period as a B/C seat driver and (3) gross compensation earned during the Class Period as a B/C seat driver ("B/C Seat Settlement Allocation"). *Id.* at ¶ C.2.b.ii. Any B/C Seat Class Member who also participated in Defendant's orientation/training program and/or drove for Defendant as an A Seat driver or as an independent contractor driver is also entitled to additional sums through the settlement, in connection with the claims asserted in the *Oliveira* matter.[5] *Id.* at ¶ C.2.b.vi ("*Oliveira* Settlement Allocation"). For more explanation of the formulas for calculating individuals' shares from each fund, *see* Settlement Agreement (Exhibit 1), Section C.

B/C Seat Class Members will have 60 days in which to submit a Consent to Join Form or exclude themselves from the settlement (except that the deadline shall be extended for those for whom the original Notice Packet is returned as undeliverable so that those individuals with re-

---

[4] Of the Eight Million Five Hundred Thousand Dollars allocated to the claims of the B/C Seat Class Members, Three Million Five Hundred Thousand Dollars shall be non-reversionary. Agreement at ¶ B.2.

[5] Defendant has agreed to establish a Settlement Fund in the amount of Twenty-Eight Million Dollars ($28,000,000.00). Agreement at ¶ A. Of this amount, the parties separately negotiated that Eight Million Five Hundred Thousand Dollars ($8,500,000.00) would be allocated to the B/C Seat Settlement Class. Agreement at ¶ B.2; *see also* Crimmins Dec. at ¶ 11. The remaining Nineteen Million Five Hundred Thousand Dollars ($19,500,000.00), which will be reviewed and approved in the *Oliveira* matter, was allocated to cover the orientation/training claims, as well as the claims of the A Seat and independent contractor drivers. Agreement at ¶ B.

4

mailed Notice Packets shall have no less than 30 days, even if that extends their time beyond the original deadline). Agreement at ¶¶ F.6, F.5.c. B/C Seat Class Members who submit a Consent to Join Form ("Opt-in Class Members") will receive the Minimum Allocation, their B/C Seat Settlement Allocation[6] and their *Oliveira* Settlement Allocation (if applicable). B/C Seat Class Members who do not exclude themselves, and do not submit a Consent to Join Form, will receive the Minimum Allocation of $100.00 ("Minimum Participation Class Members").[7] B/C Seat Class Members who exclude themselves from the Settlement will not receive any money from the Settlement Fund, nor will they release any claims against Defendant. *Id.* at ¶¶ C.2.b.vii, G.7.

Settlement checks will be mailed within thirty (30) days of the Effective Date of the Settlement. If the check remains uncashed or uncollected after 180 days, the settlement funds will be delivered to the appropriate state Unclaimed Property Division or Fund and B/C Seat Class Members can collect their settlement proceeds through this fund. Agreement at ¶ F.11.

**2. Releases and Non-Monetary Relief**

Upon the effective date of the settlement, Participating Class Members will release all federal and state unpaid wage claims, contract and quasi contract claims and any other claims related to unpaid wages or compensation that could have been brought in this matter, or in *Oliveira* matter, to the fullest extent allowed by law through May 8, 2020. The back of the settlement checks to Minimum Participation Class Members will further contain language on the back of the check in substantially the same form as the following "By endorsing this check, I agree to opt in to the *Oliveira* and *Haworth* settlement and release all federal and state unpaid wages claims,

---

[6] Following the close of the opt-in period, the amounts allocated from the non-reversionary portion of the B/C Settlement Fund to those B/C Seat Class Members who do not submit claim forms will be re-allocated, pursuant to the equitable formula set forth above, to those B/C Seat Class Members who filed Consent to Join Forms. Agreement at ¶ C.2.b.ii.d).

[7] These minimum allocation payments will come from the Orientation Fund, the B/C Seat Fund, and the A Seat Fund.

contract and quasi-contract claims, and any other claims related to unpaid wages or compensation that were or could have been brought in the *Oliveira* and/or *Haworth* cases against New Prime and its subsidiaries and/or affiliates." *Id.* at ¶ G.2-3.

In addition to the monetary relief, Defendant agreed to several other non-monetary terms which provide significant relief to B/C Seat Class Members. Specifically, upon the effective date, Defendant agrees to release entitlement to and shall not pursue collection efforts relating to any money allegedly owed to Defendant by any B/C Seat Class Member (e.g., Opt-in Class Members or Minimum Allocation Class Members) who at the time of their departure from Defendant were in orientation, a B/C seat position, or an A seat company position[8]. *Id.* at ¶ G.4. This non-monetary relief will be provided to these individuals automatically, regardless of whether they submit claim forms to participate in the settlement. In addition, after final approval, Defendant will use its best efforts to request that the national credit reporting agencies delete any trade line(s) with respect to participating B/C Seat Class Member's accounts with Defendant. Participating B/C Seat Class Members will also have the right to request that records of any alleged default be corrected/rescinded. *Id.* at ¶ I.

### 3. Class Notice and Administration Costs.

In order to administer and effectuate the terms of the Settlement Agreement fairly, the parties have agreed that JND Legal Administration will act as the Settlement Administrator. Agreement at ¶ E. Defendant will pay for the settlement administration costs, as well as litigation costs, out of the settlement fund in an amount not to exceed Two Hundred Twenty-Five Thousand Dollars ($225,000.00). *Id.* at ¶ C.7. The Settlement Administrator will send to each B/C Seat Class

---

[8] Defendant has also agreed to release entitlement to and has agreed not to pursue collection efforts against participating class members who were independent contractors at the time of their departure from Defendant under two conditions: (1) the class member submits a timely and valid claim form; and (2) the class member has not destroyed, damaged, or stolen Prime property. *See* Agreement at ¶ G.5.

Member, by email, a Notice (attached as Exhibits A and B to the Agreement), along with a Consent to Join Form (attached as Exhibit C to the Agreement) (collectively the "Notice Packet"), informing B/C Seat Class Members of their right to participate in the Settlement and the approximate amount they are entitled to receive if they file a Consent to Join Form or if they do nothing. Agreement at ¶ F.3. If a Notice Packet is returned as undeliverable via email or if Defendant does not have an email address for an individual, the Settlement Administrator shall mail a Notice (attached as Exhibit B to the Agreement), along with a Consent to Join Form (Exhibit C to the Agreement) to Class Members (using all reasonable efforts to obtain up-to-date addresses). Approximately halfway through the notice period, a reminder postcard will be sent by email and/or mail to Class Members who have not submitted a Consent to Join Form. Agreement at ¶ F.5.d. Additionally, the Settlement Administrator shall establish a website for the settlement which will contain the notice, the Consent to Join Form (which may be submitted electronically via the website or printed), the Settlement Agreement, and contact information for the Settlement Administrator and Plaintiffs' Counsel. *Id.* at ¶ F.3.

The Notice generally follows the form of class notice endorsed by the Federal Judicial Center, and explains in clear terms (1) the nature of the Settlement and the claims released, (2) the amount each eligible Class Member has been allocated if they participate in the Settlement[9], (3) the requirement that Class Members must exclude themselves pursuant to the procedure outlined in the Notice if they do not wish to participate in the Settlement, (4) how to submit any objections to the Settlement, and (5) the non-monetary relief provided. *Id.* The procedures for requesting exclusion from the settlement and/or objecting are those commonly used in class action

---

[9] The Notice provides the Class Member with their total minimum settlement payment that they would be eligible to receive from the settlement. *See* Agreement, at Ex. B.

settlements, are straightforward, and are clearly described in the Notice. *See* Exhibit A and B to Agreement. Notice will be provided in Spanish as well as English. Agreement, ¶ F.3.c. Class Members will be permitted to submit a Consent to Join Form either via email, mail, or electronic submission on the settlement website. Agreement at ¶ F.6.

### 4. Plaintiff's Service Award and Attorneys' Fees.

Pursuant to the terms of the Agreement, and in exchange for a global, mutual release, Plaintiff's Counsel will apply for a service award not to exceed Twenty Five Thousand Dollars ($25,000.00) for Named Plaintiff Rocky Haworth for his efforts in prosecuting this case, including retaining counsel, reviewing and authorizing the filing of the Complaint, submitting information to counsel, attending a mediation and participating in multiple rounds of settlement discussions, answering written discovery and having his deposition taken, and for the general release of all of his claims. *Id.* at ¶ C.6. Plaintiff's counsel will also file a petition with the Massachusetts Court for approval of attorneys' fees not to exceed thirty-three percent of the Settlement Fund and reimbursement of expenses incurred in this case since its inception and for future legal services and expenses incurred in connection with the administration of this class and collective action Settlement. *Id.* at ¶ C.5.

### 5. Transfer, Settlement Administration and Final Approval

Given the fact that this Settlement impacts claims in both this matter and the *Oliveira* matter and that the *Oliveira* matter encompasses a broader swath of claims (all class members in this case also have claims in the *Oliveira* matter), the parties have agreed that this matter should be transferred to the District of Massachusetts and consolidated with the *Oliveira* matter for settlement administration purposes and final approval, following preliminary approval of this Settlement by this Court as to the conditionally certified class of B/C Seat Drivers by this Court. *Id.* at ¶ D. The parties are seeking consolidation of this matter with the *Oliveira* matter for purposes

8

of notice, administration and final settlement approval. *Id.* If the District of Massachusetts does not finally approve this settlement, then this matter would be transferred back to this Court for continued prosecution in accordance with the Court's conditional certification order. *Id.* at ¶ D.7.[10]

## II.     LEGAL STANDARD

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs and rigor of prolonged litigation. *Little Rock School Dist. v. Pulaski Cty. Special School Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them."). When a proposed class-wide settlement is reached, it must be submitted to the Court for preliminary approval. *See* Fed. R. Civ. Proc. 23(e); *see also* H. Newberg & A. Conte, *Newberg on Class Actions* §11.41 (4th. ed. 2011) (hereafter "*Newberg"*); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (proposed settlements under the FLSA generally require court approval). Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. *See Manual for Complex Litigation* § 21.632 (4th ed. 2012) (hereafter *"Manual"*). The second step is dissemination of notice of the settlement to all class members which informs class members how to make their views on the settlement known to the court. *Manual* § 21.633. The third step is a settlement approval hearing. *Id.*

At the outset, even before the terms of the settlement are assessed, a proposed class settlement enjoys a presumption of fairness. Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* at § 11.41; *see also Little Rock School Dist.*, 921 F.2d

---

[10] In the event that this Court and/or the District of Massachusetts do not agree to the transfer and consolidation for purposes of settlement administration and final settlement approval, the parties will revisit the settlement structure. Agreement at ¶ D.7.a.

at 1391 (stating that class action settlement agreements "are presumptively valid."); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (quoting *Little Rock*). After the parties' arm's-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (internal quotation marks omitted).

At the preliminary approval stage, the Court must determine whether the settlement is "fair, reasonable and adequate," including whether the settlement is void of obvious substantive or procedural deficiencies. *Manual* at § 21.632; *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).[11] After a preliminary determination on the settlement terms, the Court should determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Manual* § 21.632. As the proposed settlement meets these criteria, preliminary approval should be granted.

## III.     ARGUMENT

### A.   A Review of the Applicable Factors Favors Approval of the Settlement.

#### 1.   The Terms of the Proposed Settlement are Fair, Reasonable and Adequate

A preliminary review of the terms of the proposed Settlement leaves no doubts as to its fairness, the propriety of class certification for settlement purposes, and/or whether it is likely to be given final approval by the Massachusetts Court. *See* Federal Rule 23(e); *see also Newberg*, § 11.41. Courts are to give "proper deference to the private consensual decision of the parties," since "the Court's intrusion upon what is otherwise a private consensual agreement negotiated between

---

[11] Under the FLSA, before approving a settlement, the Court must be satisfied that the settlement was the result of "contested litigation" and involves a fair and reasonable resolution of a bona fide dispute over contested issues. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*; *see also Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986).

the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

Plaintiffs' proposed allocation formula is fair, reasonable, and adequate in that it takes into account each individual's potential damages from the case and allocates the settlement monies accordingly. Courts routinely hold that such formulas are fair, reasonable, and adequate.[12] After amounts are set aside for reasonable litigation and administration costs, attorneys' fees and service awards, the remaining $5,563,750.00 will be available to the 26,476 B/C Seat Class Members, and the average per capita settlement of the B/C Seat Claim is approximately $210.14 per Class Member. B/C Seat Class Members spent on average 11.71 weeks driving as a B/C Seat Driver. The average award for time spent as a B Seat Driver plus their minimum allocation is $266.99 meaning that on average each B/C Seat Class Member will receive $22.80 per week driving as a

---

[12] Indeed, courts have held that a distribution formula that reimburses class members based on the type and extent of their injuries is presumptively reasonable. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable") (citations omitted); *Schueneman v. Arena Pharmaceuticals, Inc.*, 310CV01959CABBLM, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020)(quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)("The allocation formula used in a plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 110 (D. Mass. 2010) (holding that plan of allocation was reasonable because it was based on class members' losses); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries"); *In re Citric Acid Antitrust Litigation*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan that "reimburses class members based on the type and extent of their injuries is generally reasonable").

B/C Seat Driver.[13]  For Class Members who were employed the longest during the class period, and worked the most number of weeks and drove the most miles, individual settlement amounts exceed $1,000 with a high of $7,036.64.  *See* Crimmins Dec. at ¶ 12.

The claims in this case focused upon whether Class Members were paid minimum wage for all hours worked as a B/C seat driver, which was a disputed fact, including whether certain hours were compensable work under the FLSA.  However, the amounts to be recovered through the settlement are significant. Based on an average rate of pay and an average number of weeks worked as a B/C Seat driver, the settlement reached will result in each Class Member receiving on average approximately 3.14 hours of minimum wage pay for each week worked.[14] *See* Crimmins Dec. at ¶ 13.  Moreover, in addition to these amounts, B/C Seat Drivers will also receive sums relating to the other claims in the *Oliveira* matter, to the extent that the participate in orientation and/or drove as an A seat driver and/or an independent contractor driver.  B/C Seat Drivers will also receive significant non-monetary relief, as described in Section I.D.2, *supra*.  This settlement reflects what Plaintiff and the proposed class could expect at a trial and it avoids the costs, risks, and delay of a trial and appeal. Crimmins Dec at ¶ 15.  As a result, the proposed settlement is fair, reasonable, and adequate under the circumstances.

### 2. The Parties Engaged in Meaningful Discovery and Vigorous Arm's Length Negotiations before Reaching an Agreement.

Before reaching a settlement agreement in principle with Defendant, Plaintiff's Counsel conducted substantial investigation and engaged in arm's length discussions in this litigation.  As a part of their efforts, Defendant produced millions of lines of electronic data, and the parties

---

[13] This average number differs from the per capita average due to the minimum awards each B/C Seat Class Member will receive.  *See* Discussion, supra, n.7.

[14] This number was reached by dividing the average allocation for B Seat Claims plus minimum of $266.99 by the average number of weeks worked as a B/C Seat driver of 11.71.  This results in the amount of $22.80 per week on average or 3.14 hours of pay at $7.25.

exchanged other relevant data and records with respect to the amount of time worked, including miles driven, and wages paid. Armed with the critical class data, as well as other business records of the Defendant, Counsel for the parties were able to fully analyze the data and research applicable law. The exchanged information provided the Named Plaintiff and Plaintiff's Counsel with ample knowledge of the valuation of damages as well as strengths and weaknesses of Class Members' claims. Crimmins Dec at ¶¶ 9-10. Following this exchange of information and fact-gathering process, the parties extensively discussed the merits of the claims and defenses and the relief available to the Class. The settlement negotiations were, at all times, arm's length, and conducted in the utmost good faith. *Id.* The Settlement is fair, reasonable and adequate under the circumstances and justifies preliminary approval.

## B. Rule 23 Certification for Settlement Purposes is Appropriate in this Matter

Before granting preliminary approval of a settlement, the Court should also determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods.,* 521 U.S. at 620; *see also* Manual, § 21.632. "To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). . . ." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006). In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed class action meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### 1. Rule 23(a) Standards are Satisfied

Under Rule 23(a), a settlement class must meet four requirements: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23; *In re*

*Urethane Antitrust Litig.*, 251 F.R.D. 629, 633 (D. Kan. 2008) (citing Fed. R. Civ. P. 23). This proposed Settlement Class satisfies all four requirements.

### a. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Numerosity is a determination that must be made by the district Court "in light of the particular circumstances of the case … " *Ark Ed. Ass'n v. Bd. of Educ. of the Portland, Ark. School Dist.*, 446 F.2d 763, 765 (8th Cir. 1971). Here, the proposed Settlement Class consists of 26,476 individuals who worked for Defendant as B/C Seat Drivers during the Class Period. Each of the class members is known and ascertainable. Class actions have been routinely certified even where the class amounts to less than fifty members. *See*, *e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d at 765-66 (20 class members sufficient). Thus, for purposes of approving a Settlement Class, joinder is impracticable and the numerosity requirement is satisfied.

### b. Commonality

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." In the instant case, numerous questions of law and fact are common to the Settlement Class and, thus, satisfy the requirement of "commonality." Plaintiff alleges Defendant utilized the same allegedly flawed method of paying Plaintiff and the putative class members. Plaintiff contends this uniformity gives rise to Class Members' claims for unpaid wages and is sufficient to satisfy the "commonality" requirement of Rule 23(a)(2) for purposes of approving a Settlement Class. *Brown v. Precythe*, No. 2:17-cv-04082-NKL, 2018 WL 3118185, *5 (W.D. Mo. June 25, 2018) (commonality is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated") (internal quotes omitted).

### c. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, n. 2, 102 S. Ct. 2364, 2371, n. 2 (1982). Courts have held:

> This requirement does not mandate … that the claims of the representative plaintiffs be identical to . . . other class members. Rather, the Court should look to whether the claims of the representative plaintiff are antagonistic to the claims of the proposed class. 'Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected.'

*Swisher v. U.S.*, 189 F.R.D. 638, 640-641 (D. Kan. 1999) (citations omitted) (quoting *Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991)).

For purposes of approving a Settlement Class, Plaintiff's claims are not antagonistic to the claims of the Class Members. In this litigation, Plaintiff asserts that "typicality" is further established because each Class Member was treated the same by Defendant — *i.e.*, each asserts that she or he was denied his or her proper amount of wages. *See e.g. Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8ᵗʰ Cir. 1996) (*citing Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8ᵗʰ Cir. 1977)). Although Defendant disputes it violated the law, Defendant's method of paying wages gave rise to the Class Members' claims. Thus, according to the Plaintiff, each Class Member, including Plaintiff, has the same claims. The "typicality" requirement under Rule 23(a)(3) is therefore satisfied for purposes of approving a Settlement Class.

### d. Adequate Representation

The final prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Rule 23(e)(2)(A). To establish he will fairly and adequately protect the interests of the class, the Plaintiff must show that (1) he is able to prosecute the action vigorously through qualified counsel and (2) there is no

15

conflict between his interests and those of the class members. *See* Newberg, § 24.30. With respect to the Class Members, Plaintiff alleges both elements of Rule 23(a)(4) are satisfied.

First, there is no dispute that the proposed class counsel have substantial experience in the arena of complex and class action litigation and are qualified to serve in this role. Crimmins Dec at ¶ 17. Furthermore, there is no evidence or indication of conflict between the interests of the Plaintiff and the Class Members. Under these circumstances, and for purposes of approving a Settlement Class, the requirements of Rule 23(a) are met.

### 2. Rule 23(b)(3) Standards are Satisfied

The proposed Settlement also meets the requirements of Rule 23(b)(3), which allows class certification when common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only; a showing of manageability at trial is not required. *See Amchem Prods.*, 521 U.S. at 620. The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

The proposed Settlement Class is sufficiently cohesive for purposes of preliminary approval. As described above, the Plaintiff, on behalf of all Class Members, seeks redress for Defendant's alleged failure to properly pay minimum wages. Because the Plaintiff asserts these claims all arise from events, conduct and decision making that uniformly affected all Class Members, common questions predominate over individual questions. Moreover, for purposes of approving a Settlement Class, class-wide resolution is superior to other available methods for the fair and efficient adjudication of this controversy. Given the size and nature of the Class Members' claims, they could prove impractical and inefficient for individual action because litigation costs could outstrip potential recoveries. In other words, absent class treatment, members of the Settlement Class would likely never have their day in court because they would be required to

16

undertake the burden and risk of pursuing individual actions, which is a burden that would be cost-prohibitive given the amount at stake for individual class members. Certification of the proposed Settlement is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3) and Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class and order that notice be disseminated.

### C. The Class Notice Plan is Appropriate and Conserves Judicial Resources

Federal Rule of Civil Procedure 23(c)(2)(B) requires the Court to direct to class members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 and 175, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *In re Urethane Antitrust Litig.*, 251 F.R.D. at 645. The notice must "clearly and concisely state" in "plain, easily understood language" the nature of the action, the definition of the class certified, the class claims and issues, that a class member may enter an appearance through an attorney if he or she so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice ("Notice") follows the template approved by the Federal Judicial Center and meets all requirements provided in Rule 23. Agreement at Exhibit A-C. The Notice clearly advises Settlement Class members of the nature of the action, the claims at issue, the settlement, that they can participate if they want to, and their rights to exclusion from settlement and rights to opt-out. *See id.* The Notice accurately and fully informs Class Members of the material terms of the Settlement and their rights pertaining to it.

To distribute the Notice, Defendant will provide the Settlement Administrator with a document listing the names and last known email address and mailing addresses of each Class Member. The Notice will then be sent to each Class Member (via email and/or first-class mail)

and the Settlement Administrator will use reasonable efforts and contemporary methods to maximize the probability that the Notice is received by each Class Member. In addition, Class Members will receive a reminder postcard. Finally, the Settlement Administrator shall establish a website for the settlement which will contain the notice, the Consent to Join Form (which may be submitted electronically via the website or printed), the Settlement Agreement, and contact information for the Settlement Administrator and Plaintiffs' Counsel.

The Court should approve the proposed form and direct that Notice be given to the Settlement Class. The Class Members will be able to submit their Consent to Join Forms electronically via the website, as well as email or mail.

### D. <u>Appointment of Class Counsel</u>

Pursuant to the requirements of Fed. R. Civ. P. 23(g), a court certifying a case as a class action "must appoint class counsel." Plaintiff respectfully requests that the Court appoint the undersigned co-counsel as counsel for the B/C Seat Class Members. Proposed Class counsel have extensive experience and qualifications and their adequacy has been established. *See* Crimmins Dec at ¶ 17. As the proposed class counsel will zealously prosecute the claims of the Class Members, this request should be granted.

### E. <u>Transfer and the Final Fairness Hearing</u>

Transferring and consolidating these cases for purposes of notice, settlement administration and final approval will benefit the Class. Pursuant to 28 U.S.C. § 1404(a), when the interests of justice will be served and all parties have consented, a district court may transfer a matter to another district "for the convenience of parties." All of the parties have agreed to this transfer for purposes of finalizing this proposed class and collective action settlement. *See* Agreement at ¶ D. Not only will this proposed process reduce administration and judicial costs by, for example, permitting the sending of one joint notice and submitting objections to one court,

18

but it will foster judicial economy by allowing one final fairness hearing. Accordingly, Plaintiff requests that this Court grant preliminary approval of this proposed class and collective action, and then transfer this matter to the United States District Court for the District of Massachusetts for consolidation with the *Oliveira* matter for the purpose of administering this settlement and holding a final fairness hearing.

## IV.     CONCLUSION

The law favors the compromise and settlement of class action suits. *See Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1072 (11th Cir. 2005); Newberg, at § 11.41 (and cases cited therein). Plaintiff suggests the instant Settlement is fair, reasonable, and adequate and falls within the range of possible approval and is likely to be given final approval by the District of Massachusetts as Rule 23(e)(1) provides. Accordingly, Plaintiff asks the Court enter an order (i) preliminarily approving the Settlement, (ii) preliminarily certifying the class of B/C Seat Drivers pursuant to Civil Procedure 23 and 29 U.S.C. § 216(b) for settlement purposes; (iii) approving of the parties' Notice plan as the best notice practicable under the circumstances, (iv) appointing Plaintiff as the Class Representative and the undersigned as Settlement Class Counsel for the B/C seat class; and (v) transferring the matter to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) so that it may be consolidated with the *Oliveira* matter for purpose of issuing Notice, administering the settlement and a final approval hearing, but retaining jurisdiction over this matter in the event that final approval of this settlement is not granted.

Respectfully Submitted:

**CRIMMINS LAW FIRM LLC**

*/s/ Matthew R. Crimmins*
Virginia Stevens Crimmins, MO #53139
Matthew R. Crimmins, MO #53138
214 S. Spring Street
Independence, Missouri 64050
(816) 974-7220 Telephone
(855) 974-7020 Facsimile
m.crimmins@crimminslawfirm.com
v.crimmins@crimminslawfirm.com

**HODES LAW FIRM, LLC**

*/s/ Garrett M. Hodes*
Garrett M. Hodes, MO #50221
900 Westport Road, 2nd Floor
Kansas City, Missouri 64111
(816) 931-1718 Telephone
(816) 994-6276 Facsimile
garrett@hodeslawfirm.com

**FAIR WORK, P.C.**
Hillary Schwab, *admitted pro hac vice*
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261 Telephone
(617)488-2261 Facsimile
hillary@fairworklaw.com

**COUNSEL FOR PLAINTIFF AND THE CLASS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 4th day of August 2020, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*/s/ Matthew R. Crimmins*

20